1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY RAYNAIL WILLIAMS,

11            Petitioner,                    No. CIV S-05-1286 GEB DAD P

12       vs.

13   WARDEN M.S. EVENS, et al.,

14            Respondents.              FINDINGS AND RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner, proceeding pro se, with an application for writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  On March 19, 2003, a Solano County Superior

18   Court  jury found petitioner guilty of three counts of felony false imprisonment in violation of

19   California Penal Code § 236.  (Answer, Ex. D - Reporter's Transcript on Appeal (hereinafter

20   "RT") Vol. 7 at 594-600.)  On March 21, 2003, the trial court found that petitioner had suffered

21   nine prior "strike" convictions.  (Id. at 620-21; Answer, Ex. A - Clerk's Transcript on Appeal

22   (hereinafter "CT") at 171.)  Petitioner was sentenced to 25 years-to-life in state prison on count

23   one, with a consecutive term of 25 years-to-life on count two, and a concurrent term of 25 years-

24   to-life on count three.  (RT Vol. 9 at 20-21.)  In his application for habeas relief pending before

25   this court, petitioner alleges that: (1) he was denied due process when his motion to dismiss on

26   "speedy trial" grounds under California Penal Code § 1381 was denied, (2) his trial counsel

                                             1

rendered ineffective assistance by failing to protect his right to a speedy trial under state law, (3)

his conviction was based on insufficient evidence with respect to counts two and three, and (4)

the trial court violated his right to confrontation and due process by prohibiting his cross-

examination of a prosecution witness. (Am. Pet. at 5-6.) Upon consideration of the record and

the applicable law, the undersigned will recommend that petitioner's application for habeas

corpus relief be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts were taken from an unpublished opinion of the California

Court of Appeal for the First Appellate District:

> The Solano County District Attorney, by second amended information filed on March 11, 2002,[1] charged [petitioner] with three counts of felony false imprisonment regarding a woman, "C.W.," and her daughter and granddaughter, referred to herein as P. and N. The information also alleged that [petitioner] used a deadly weapon to falsely imprison C.W., charged him with a fourth count of burglary of C.W.'s home, and alleged that [petitioner] had nine prior "strike" convictions stemming from two previous cases.
>
> After a procedural controversy that we address further in our discussion section below, [petitioner's] jury trial began on March 12, 2003. C.W. testified that on October 18, 1995, at approximately 3:00p.m., [petitioner], an acquaintance of C.W. who had been to her Vallejo home previously, knocked on her door and, when she opened it, pushed his way in. He told C.W. he wanted some water, brought his bicycle inside and locked the door behind him.
>
> C.W. testified that she gave [petitioner] a glass of water and then, feeling increasingly uncomfortable, began running to her bedroom in order to leave the house through a door in that room. [Petitioner] chased after her, pushed her down on her bed, slapped her and started choking her. He said he had a gun and a knife and threatened to "cut [her] up." C.W. saw a handle and a little bit of the blade of what she thought was a kitchen knife in [petitioner]'s back pocket. Scared, she lay on her bed praying while [petitioner] held her down and pressed himself against her for a few seconds. [Petitioner] then stood up and told C.W. that he was going to tie

---

[1] Petitioner failed to appear for his originally scheduled trial in 1999, and a bench warrant for his arrest was issued. On March 5, 2001, he was arrested, apparently because of a parole violation regarding another matter, and incarcerated.

her up, proceeded to tie up her mouth, wrists and ankles, and picked her up and laid her on the bedroom floor in front of her bathroom.

While C.W. was on the floor, [petitioner] picked up a Bible in the room and said, "This is the Lord's house. Nothing's not going to happen to you in this house." He told her that if she was quiet and cooperated with him, he would not do anything to her. A short time later he also told her, "Lord must be in me. I can't hurt you if I wanted to."

C.W. testified that she heard a knock on the door 35 to 40 minutes after she had been in the bedroom. P. and N., then both eight years old, came into the bedroom a few moments later, looked at C.W., and began to cry. [Petitioner] told them he was just going to tie them up and was not going to hurt them, and tied up their wrists and feet with shoestrings. He told N., "Oh, pretty eyes. You're so pretty." He had the girls lay on the floor next to C.W., where P. at one point was "kind of kicking with her leg." [Petitioner] "stepped on [her] leg to make her be still." The three stayed on the floor of the bedroom, tied up, until about 7:00 p.m. that day.

C.W. recalled that someone knocked on the front door of the house around 4:30 p.m. and [petitioner] went out of the room, then returned and described two people that C.W. thought were her adult son Derrick and his girlfriend Anna. [Petitioner] did not answer the door. Around 7:00 p.m., [petitioner] untied C.W., P., and N., apologized and started to cry. A few minutes later, [petitioner] answered a knock at the front door. Derrick was at the door and came into the house; after Derrick greeted him, [petitioner] dashed out the door with his bicycle. C.W., P., and N. told her son what happened, and Derrick went to a neighbor's house to call the police. The police came to the house and C.W. told them what [petitioner] had done.

(Answer, Ex. L at 1-3) (footnote in original).

Following his conviction, petitioner filed his opening brief on appeal on March 31, 2004, with the California Court of Appeal for the First Appellate District raising the same issues that he presents in his petition before this court. (Id., Ex. F.) On September 16, 2004, petitioner filed an application for writ of habeas corpus with the California Court of Appeal for the First Appellate District raising three additional issues, none of which he has raised in his habeas petition in this court. (Id., Ex. I.) The California Court of Appeal considered both the direct appeal and the petition for writ of habeas corpus together. (Id., Ex. L at 1.) On February

3

1    24, 2005, the California Court of Appeal affirmed petitioner's conviction and sentence and

2    denied his application for writ of habeas corpus.  (Id.)  Petitioner filed a petition for review with

3    the California Supreme Court, which was denied.[2]  (Id. at Ex. N.)

4                                          ANALYSIS

5    I.  Standards of Review Applicable to Habeas Corpus Claims

6              A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

7    some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

8    861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

9    Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

10   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

11   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

12   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

13   (1972).

14             This action is governed by the Antiterrorism and Effective Death Penalty Act of

15   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

16   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

17   habeas corpus relief:

18                  An application for a writ of habeas corpus on behalf of a
                   person in custody pursuant to the judgment of a State court shall
19                  not be granted with respect to any claim that was adjudicated on
                   the merits in State court proceedings unless the adjudication of the
20                  claim -

21                  (1) resulted in a decision that was contrary to, or involved
                   an unreasonable application of, clearly established Federal law, as
22                  determined by the Supreme Court of the United States; or

23   ────────────────────

24        [2]  Respondent suggests that it is somewhat unclear whether petitioner has exhausted his
     state remedies with respect to his speedy trial and ineffective assistance claims.  (See Answer at
25   1; Mem. of P. & A. in Supp. of Answer at 7, fn. 4.)  Regardless, this court will address
     petitioner's claims on the merits.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of
26   habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to
     exhaust the remedies available in the courts of the State.").

                                             4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

/////

/////

/////

II. Petitioner's Claims

    A. <u>The Denial of Petitioner's Motion to Dismiss</u>

        Petitioner first claims that his federal constitutional right to due process was violated when the state trial court denied his motion to dismiss brought pursuant to California Penal Code § 1381. (Am. Pet. at 4.) The California Court of Appeal, analyzed petitioner's argument in this regard as follows:

> Before his trial, [petitioner] moved to dismiss this action on procedural grounds, arguing that his state statutory and federal due process rights were violated when his trial date was set beyond the deadline provided for in Penal Code section 1381. The court denied his motion, a ruling which [petitioner] contends was erroneous, as well as prejudicial because respondent would not have been able to refile charges against him under the applicable statute of limitations. [Petitioner] is incorrect on both claims.

> Section 1381 provides that, under certain circumstances, a person already incarcerated is entitled to trial regarding another offense within 90 days after that person's delivery of written notice to the district attorney of the place of his or her imprisonment or confinement and desire for a trial within 90 days. [Petitioner] contends the Solano County District Attorney received such a written demand from him on December 19, 2001.[3]

> Apparently, the Solano County authorities lost track of [petitioner's] status after receiving his written demand, and he remained in the custody of Alameda County authorities for trial on another charge from February 14, 2002, to June 17, 2002. [Petitioner] personally filed a one-page motion to dismiss with the Solano County Superior Court on April 24, 2002, for the purported failure to set trial for within 90 days of his section 1381 demand, but nothing in the record indicates that he pursued this motion further at that time.

> On June 24, 2002, the trial court held a trial-setting hearing in this matter. [Petitioner's] counsel, Mr. Firpo, prior to the arrival of [petitioner] or respondent's attorney, Ms. Stashyn, told the court that [petitioner] had a section 1381 demand on file, that he did not want to "jeopardize that," and suggested an August 12, 2002, trial date. Later, with all parties present, Mr. Firpo stated to the court,

---

    [3] Respondent conceded below that [petitioner] made a section 1381 demand, though the date the district attorney received it is not established in the record. For the purposes of argument, we assume that the district attorney received it as [petitioner] contends on December 19, 2001.

"We think we have to try it within 60, so we're targeting, I think the 6th." He did not mention [petitioner's] motion to dismiss. The Court then stated:

"THE COURT: All right. So according to my calculations, then supposed to start trial by the 19th of August. That would be sixty days. But we certainly don't want to back up like that. [¶] What date do you want to set this matter for trial, Ms. Stashyn?

"MS. STASHYN: The 6th was acceptable for my calendar because I'm going to be gone part of July.

"THE COURT: Okay. I'm more than happy to set it for the 6th...[W]e'll go ahead and put it down on a no-time-waiver basis to start at 8:30 in a department yet to be determined. But it'll be on my calendar for the 6th of August."

[Petitioner] moved on July 12, 2002, to dismiss the action for failure to start trial within section 1381's time limits, which motion was scheduled to be heard on August 2, 2002. After respondent correctly pointed out in its opposition that the 90-day period had been tolled during the time [petitioner] was in Alameda County, pursuant to People v. Boggs, 166 Cal. App. 3d 851 (1985), [petitioner] argued that even with the tolling period taken into account, his trial should have been set for no later than July 27, 2002. [Petitioner] argues on appeal that he could so move because he had not waived his right to object to the time of trial, as reflected in the court's statement at hearing that the trial date was being set "on a no-time waiver basis."

On August 2, 2002, the court denied [petitioner's] motion, relying on People v. Lenschmidt, 103 Cal. App. 3d 393, 396 (1980), an opinion issued by our district, in which the court held that a defendant has a duty to protect his right to a speedy trial by objecting when his trial date is set for a date beyond the section 1381 deadline. The trial court also indicated that respondent could refile the action, in effect indicating that [petitioner] was not prejudiced in any event.

The trial court correctly relied on Lenschmidt to deny [petitioner's] motion to dismiss. The Lenschmidt defendant was arraigned 49 days after he had served the district attorney with a section 1381 demand, at which time his trial was set to start eight days after the 90-day period was to expire. (Citation omitted). The trial court subsequently granted the defendant's motion to dismiss pursuant to section 1381. (Citation omitted). The appellate court reversed this ruling on the ground that the defendant had waived his section 1381 rights by not objecting to the improper trial date, noting that "section 1381 requires a defendant to protect his right to speedy trial by speaking up when a date set for trial infringes on that right.

Neither inadvertence nor gamesmanship dissipates that duty."
(Citation omitted).

Lenschmidt's holding applies here as well. Indeed, the facts here
are even more compelling. [Petitioner], although he had filed a
motion to dismiss prior to the June 24, 2002, hearing did not
mention his motion and made no objection to the trial dates
discussed. To the contrary, he, through his own counsel, proposed
the trial date he later objected to, made statements indicating that
he understood the trial date was within the allowable statutory time
period, and filed a motion that was to be heard only after the
statutory deadline expired. Whether [petitioner's] actions were a
result of inadvertence or gamesmanship, the sound rule articulated
in Lenschmidt controls. [Petitioner's] counsel, by his own proposal
of, and representations about, the trial date set by the court, waived
any section 1381 rights [petitioner] might have otherwise had.

[Petitioner] attempts to distinguish Lenschmidt by noting that in
that case, no one informed the court of the existence of a section
1381 demand while here, his counsel supposedly did so, but erred
and suggested the "wrong date for trial setting." [Petitioner] fails to
explain why this distinction matters in light of Lenschmidt's
explicit declaration that inadvertence does not excuse a party's
actions regarding the trial date.

[Petitioner] relies on another case also issued by our district,
Vukman v. Superior Court, 116 Cal. App. 3d 341, 348, footnote 2
(1981) (Vukman), overruled on other grounds in People v. Cuevas,
12 Cal. 4th 252, 275, footnote 5 (1995). In Vukman, the appellate
court held that the trial court erred in denying a motion to dismiss
brought pursuant to section 1381. However, as respondent notes,
that case is inapposite because it involved a defendant's failure to
object to a trial date set at a hearing that occurred *after* the section
1381 time period had already expired; indeed, the Vukman court
distinguished its facts from those in Lenschmidt on this very basis.
(Citations omitted.)

[Petitioner] cites dicta in Vukman that questions Lenschmidt to the
extent it allows section 1381 rights to be waived by silence at a
trial setting hearing, given that section 1381 states that the trial
occur 90 days after demand "'unless a continuance is requested or
consented to by [the incarcerated defendant], in open court, and
such request or consent entered upon the minutes of the court
. . .'"(Citations omitted.) However, the Vukman court made clear
that it was not answering the question it raised. (Citation omitted).
Accordingly, Lenschmidt remains the controlling authority on the
issue.

In light of our holding that the trial court correctly denied
[petitioner's] motion to dismiss, we need not address the second
issue debated between the parties, namely whether [petitioner] was

somehow prejudiced by the trial court's purportedly incorrect ruling. We do so briefly, however, to address [petitioner's] contention that the district attorney would not have been able to refile charges against him because the applicable statute of limitations period had run. This is not correct. Both parties agree that a three-year statute of limitations period applied here. Respondent alleged that [petitioner] committed his criminal acts on October 18, 1995. For purposes of statute of limitations analysis, a prosecution begins with the issuance of an arrest warrant (Pen. Code §804(d)), which the record indicates was issued here on January 12, 1996, less than three months after the three-year statute of limitations period began to run. Clearly, then, respondent had time to refile its charges if the court had granted [petitioner's] motion to dismiss,[4] and [petitioner], therefore, suffered no cognizable prejudice by any purported error. (Pen. Code §1387(a); Crockett v. Superior Court, 14 Cal. 3d 433, 437 (1975)).

The trial court properly denied [petitioner's] motion to dismiss.

(Answer, Ex. L (Opinion) at 7-11) (footnotes in original).

To the extent petitioner is arguing that his right to a speedy trial under California law was violated, his claim is not cognizable in this federal habeas corpus petition. Estelle, 502 U.S. at 67-68 (federal habeas corpus is not available for attacks on violations of state law or procedure); Middleton, 768 F.2d at 1085. Accordingly, the sole issue before this court is whether petitioner's federal constitutional right to a speedy trial was violated.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. Const., Amend. VI. In assessing a speedy trial claim, the court must weigh four factors: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Doggett v. United States, 505 U.S. 647, 651 (1992) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). See also McNeely v. Blanas, 336 F.3d 822,

---

[4] Even if this warrant had not commenced the action, a filing of an information may commence a case (Pen. Code § 804(a)), and would toll any statute of limitations. (Citation omitted.) The original information in this action was filed on December 3, 1997.

826 (9th Cir. 2003); United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986). "No single factor is necessary or sufficient." McNeely, 336 F.3d at 826. Rather, the four factors are related and must be considered together. Barker, 407 U.S. at 533. However, "no showing of prejudice is required when the delay is great and attributable to the government." United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992). See also Doggett, 505 U.S. at 651 (eight and one-half year delay between indictment and trial, six of which were attributable to the government's negligence, violated a defendant's constitutional right to a speedy trial even though he could not demonstrate the delay impaired his ability to mount a successful defense).

The Supreme Court has observed:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

Barker, 407 U.S. at 530. In this regard, depending on the nature of the charges, courts have generally found post-accusation delay "presumptively prejudicial" when it begins to approach one year. Doggett, 505 U.S. at 652, n.1; see also McNeely, 336 F.3d at 826 (three-year delay was presumptively prejudicial); United States v. Gregory, 322 F.3d 1157, 1162 (9th Cir. 2003) (22-month delay between first superseding indictment and trial date was presumptively prejudicial but did not weigh heavily in defendant's favor because it was not excessively long); United States v. Aguirre, 994 F.2d 1454, 1457 (1993) (finding that "a five year delay is long enough to trigger a further look," but concluding that even the five-year delay in that case did not deprive the defendant of his constitutional right to a speedy trial when all the Barker v. Wingo factors were balanced).

Here, even assuming arguendo that petitioner's Sixth Amendment right to a speedy trial was triggered by his written demand allegedly received by the Solano County District Attorney's Office on December 19, 2001 rather than on his arrival in Solano County custody

after June 17, 2002, the approximately seven and one-half month delay between the alleged receipt of that demand and the commencement of trial, although not insignificant, was not presumptively prejudicial. Moreover, there is no allegation in this case that the delay in bringing the case to trial was for any improper purpose or that the prosecution improperly sought to lengthen the proceedings against petitioner. See United States v. Marion, 404 U.S. 307, 325 (1971) (it would be improper for the prosecution to intentionally delay in order "to gain some tactical advantage over [defendants] or to harass them"); McNeely, 336 F.3d at 827. Further, the record reflects that petitioner's case proceeded through the trial court in a timely manner once petitioner arrived in Solano County and indicated that he was invoking his right to a speedy trial.

Because any delay in bringing petitioner to trial was not excessive, there is no presumption of prejudice to petitioner. See McNeely, 336 F.3d at 831-32. Thus, it is the fourth factor, actual prejudice to the defendant, that weighs most heavily in the evaluation of petitioner's claim. Valentine, 783 F.2d at 1417. Petitioner has completely failed to establish, or even to allege, that his defense was hindered in any way by the time it took to bring his case to trial. Thus, petitioner has failed to demonstrate that he suffered any prejudice because of any delay in bringing him to trial.

As explained by the state appellate court, petitioner failed to protect his own right to a speedy trial under California law by assenting to a trial date set slightly outside the statutory period. No established federal law suggests that a state trial court must grant a motion to dismiss pursuant to California Penal Code § 1381 under these circumstances. Moreover, petitioner's Sixth Amendment right to a speedy trial was not violated. Therefore, petitioner is not entitled to federal habeas relief on this claim.

B. Ineffective Assistance of Counsel

In his second claim petitioner contends that his trial counsel provided ineffective assistance by failing to adequately protect petitioner's speedy trial rights under California law. (Am. Pet. at 4.) Petitioner argues that "had defense filed a timely motion baring [sic] trial court

and prosecution from setting a trial date due to the 1381 motion to dismiss being calculated

correctly that trial date was pass [sic] the 90 day mark, there would never have been a trial." (Id.)

The Sixth Amendment guarantees the effective assistance of counsel. The United

States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

Strickland v. Washington, 466 U.S. 668 (1984). To support such a claim, a petitioner must first

show that, considering all the circumstances, counsel's performance fell below an objective

standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that

are alleged not to have been the result of reasonable professional judgment, the court must

determine whether, in light of all the circumstances, the identified acts or omissions were outside

the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S.

510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's

deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a

probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S.

at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not

determine whether counsel's performance was deficient before examining the prejudice suffered

by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

697).

The California Court of Appeal rejected petitioner's argument that he had

received ineffective assistance of counsel in this regard, reasoning as follows:

> [Petitioner] first argues that he was prejudiced by his trial counsel's
> purported mistake in agreeing to the August 6, 2002 trial date,
> because "had defense counsel provided reasonably competent
> assistance in relation to the Penal Code section 1381 demand, the
> trial court would have ultimately granted the motion to dismiss

> [petitioner's] charges following the failure of the prosecution to
> bring [petitioner] to trial by July 27, 2002." This is not correct.
>
> * * *
>
> The record does not affirmatively show that [petitioner's] counsel
> did not act regarding the setting of a trial date with tactical
> purposes in mind. For example, [petitioner's] counsel may have
> asked for the August 6, 2002 trial date because he wanted
> additional time to prepare for trial. Also, it is not reasonably
> probable that, but for [petitioner's] purported mistake, the result
> would have been more favorable to him. [Petitioner's] motion to
> dismiss would not have been granted if counsel had correctly stated
> the time deadline at the June 24, 2002 hearing; [petitioner] would
> have simply received a slightly sooner trial date and nothing more.
> Therefore, we reject [petitioner's] argument.

(Answer, Ex. L (Opinion) at 23-24.)

The conclusion of the California Court of Appeal that petitioner's trial counsel did not render ineffective assistance is not contrary to or an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[5] For the reasons expressed by the state appellate court, even if trial counsel's performance in requesting a trial date of August 6 instead of July 27 was deficient, petitioner suffered no prejudice as a result. As the state appellate court observed, had trial counsel done as petitioner claims he should have, the state's case would not have been dismissed. Rather, petitioner's trial would simply have been set two weeks sooner. Therefore, petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

C. Insufficient Evidence as to Count Two and Count Three

Next, petitioner argues is that there was insufficient evidence offered at his trial to convict him of felony false imprisonment as to counts two and three which related to C.W.'s daughter and granddaughter. (Am. Pet. at 5.). Petitioner argues that "according to prosecution

_____

[5] As the California Court of Appeal observed, petitioner did not object to the trial date requested by his counsel in his presence. See Denham v. Deeds, 954 F.2d 1501, 1505 (9th Cir. 1992) ("[P]etitioner's own waiver of his right to a speedy trial cannot now be blamed on his attorney to support a claim of ineffective assistance of counsel."

witness trial testimony there is insufficient evidence to prove the felony elements of violence or menace." (Id.) The California Court of Appeal rejected petitioner's argument, reasoning as follows:

> [Petitioner] contends there was not sufficient evidence to find him guilty of felony false imprisonment of P. and N. "because the prosecution failed to present substantial evidence of the essential elements of violence or menace." [Petitioner] is incorrect.
>
> We review a claim that evidence is insufficient to support a conviction by determining whether the entire record, viewed in the light most favorable to the judgment and presuming the existence of every fact that could reasonably be deduced from the evidence, discloses substantial evidence based upon which a reasonable trier of fact could find each element of the charged offense beyond a reasonable doubt. [Citations omitted.] Under a "substantial evidence" standard of review, "'"an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find [the elements of the crime] beyond a reasonable doubt."'" [Citations.] "'"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant reversal of the judgment."'" (In re George T., 33 Cal. 4th 620, 631-632 (2004)).
>
> False imprisonment is defined in section 236 as "the unlawful violation of the personal liberty of another." "[T]he essential element of false imprisonment is restraint of the person. Any exercise of express or implied force which compels another person to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment." (People v. Bamba, 58 Cal. App. 4th 1113, 1123 (1997)). Section 237 provides that a false imprisonment offense is punishable as a felony if it is effected by "violence, menace, fraud, or deceit." "'[V]iolence' means ' "the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint."'" (Ibid.) "'[M]enace' means ' "a threat of harm express or implied by word or by act."'" (Id. at 1123.)
>
> When young children are the victims, a person does not have to use violence or menace directed at the children to be found guilty of felony false imprisonment. (People v. Rios, 177 Cal. App. 3d 445, 450 (1986) (Rios)). Rios, discussed favorably by our Supreme Court in In re Michelle D., 29 Cal. 4th 600, 608-609 (2002), affirmed the felony false imprisonment conviction of a father who abducted his infant daughter by deceiving his ex-wife. [Citation omitted.] The father, although he did not challenge that he had

falsely imprisoned the infant, contended his crime was a misdemeanor because he did not force, menace, defraud, or deceive the infant. [Citation omitted.] The appellate court disagreed, stating, "for the purpose of a felony false imprisonment conviction under sections 236 and 237, when the victim is a child of tender years, it is sufficient if the crime is 'effected' by 'violence, menace, fraud, or deceit' directed to the custodial parent rather than the child herself." The court's analysis was based on the fact that "nowhere in section 236 or 237 does it state that the 'violence, menace, fraud, or deceit' must be committed against the victim herself. The statutes merely state in general terms that the crime of felony false imprisonment must be 'effected' by one of these elements. [Petitioner's] interpretation of that provision would have the effect of narrowing its applicability in a way that the language itself does not warrant. As a rule, '[i]n construing the statutory provisions a court is not authorized to insert qualifying provisions not included and may not rewrite the statute to conform to an assumed intention which does not appear from its language. The court is limited to the intention expressed.'" [Citation omitted. Footnote omitted.]

With these rules in mind, we conclude that there was substantial evidence that [petitioner] used violence and menace over and above that necessary to effect the false imprisonment of P. and N. First, there was substantial evidence that [petitioner's] false imprisonment of P. and N. was "effected" by his use of violence and menace against C.W. C.W. testified that [petitioner] hit her, shoved her, threatened to "cut [her] up," laid on top of her and, after tying her up, requiring her to lie prone on her bedroom floor. P. and N. were both eight-years old, a tender age by any reasonable standard. [Citations omitted.] They were in C.W.'s custodial care, and were overwhelmed when they found C.W. tied up and lying on her bedroom floor, both immediately bursting into tears. [Petitioner] tied them both up and caused them to lie prone on the bedroom floor while they were in this state of mind.

Indeed, there is substantial evidence that when the girls came to the door of the house, [petitioner] left C.W. tied up, gagged and lying prone on the floor, and then directed the girls to the back bedroom to see her in this state, thereby menacing P. and N. P. testified that when [petitioner] opened the door of the house, she and N. asked [petitioner] where C.W. was, he told them she was in the back room without saying another word, and he then walked directly behind them as the girls went to that room, where he promptly tied them up after they observed C.W. and burst into tears. It can be inferred from this testimony that [petitioner] knew full well that he was menacing the two eight-year-old girls by exposing them to the shocking sight of C.W. in her victimized state. In short, the jury reasonably could have concluded that [petitioner's] actions menaced the girls and effected their restraint.

There were other acts of violence and menace against the girls as well. Respondent contended at trial and upon appeal that [petitioner's] tying up of the children's hands and feet was an act of violence supporting [petitioner's] felony convictions. [Petitioner] contends this view eviscerates the difference between the force necessary for misdemeanor false imprisonment and the additional violence needed for felony false imprisonment, relying on discussions in People v. Matian, 35 Cal. App. 4th 480 (1995) and People v. Babich, 14 Cal. App. 4th 801 (1993), about what particular acts and statements constituted sufficient evidence of violence or menace. However, these cases do not contradict the law which guides us here, that being if there is substantial evidence of a minimal quantum of force over and above that reasonably necessary to effect restraint of the children, we must affirm [petitioner's] felony conviction. [Citation omitted.] There was sufficient reasonable, credible evidence of solid value, from which the jury could conclude beyond a reasonable doubt that [petitioner's] tying up of both the girls' hands and feet involved more force than was reasonably necessary to restrain them, such as the girls' very young ages, their presence in an enclosed area, and their distressed states of mind. For example, the jury could have reasonably concluded that [petitioner] could have bound only their feet and found, therefore, that he employed violence over and above the force necessary to restrain the girls.

The record reveals other substantial evidence supporting [petitioner's] felony convictions as well. C.W. testified that after P. was lying on the floor, [petitioner] stepped on P.'s legs in order to stop her from kicking her leg, when he could have simply moved away. [Petitioner] also told N. that she was pretty and had pretty eyes, which the jury could have reasonably concluded menaced N., since it was said to an eight-year-old girl not by a friend, but by a man with a knife sticking out of his pocket who had tied up and gagged the girl's grandmother and now sought to tie her up as well.

In short, there was substantial evidence that [petitioner's] false imprisonment of P. and N. was effected by violence beyond that reasonably necessary to restrain them, and by menace. Therefore, we reject [petitioner's] claim that there was insufficient evidence to justify his felony false imprisonment conviction. [Footnote omitted.]

(Answer, Ex. L (Opinion) at 12-16.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

16

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 & n.13.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Thus, "[t]he question is not whether we are personally convinced beyond a reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

Viewing the evidence in the light most favorable to the verdict, and for the reasons described by the California Court of Appeal, the undersigned concludes that there was

sufficient evidence from which a rational trier of fact could have found beyond a reasonable

doubt that petitioner was guilty of felony false imprisonment of P. and N.  As explained by the

state appellate court, there was evidence introduced at petitioner's trial indicating that he used

force and violence against C.W., which under state law is sufficient to support a felony false

imprisonment conviction under California Penal Code § 237 with respect to the children rather

than a mere misdemeanor false imprisonment conviction.  See People v. Rios, 177 Cal. App. 3d

445, 450 (1986).  There was also substantial evidence presented to the jury that petitioner

menaced the eight-year-old children, P. and N., by exposing them to the shocking sight of C.W.

tied up in the bedroom and that he used violence beyond that reasonably necessary to restrain

them by tying them up at the hands and feet as well.  Finally, there was substantial evidence

before the jury that petitioner's false imprisonment of P. and N. was effected by violence beyond

that reasonably necessary to restrain them, and by menace, when he stepped on P.'s legs to stop

her from kicking and when he made his odd comments to N. under the circumstances.  The state

appellate court's opinion rejecting petitioner's insufficiency of the evidence argument is a

reasonable construction of the evidence in this case and is not contrary to or an objectively

unreasonable application of federal law.  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002); see

also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to habeas relief on his claim

that the evidence introduced at his trial was insufficient to support his conviction on the charge of

felony false imprisonment of P. and N.

D.  Due Process and the Confrontation Clause

Petitioner's final claim is that the trial court violated his "federal right to

confrontation and due process by prohibiting cross-examination of prosecution witness."  (Am.

Pet. at 5.)  In this regard, petitioner argues that the "trial [court] did not let defense cross-examen

[sic] procsection [sic] witness conduct which involved moral turpitude."  (Id.)

The California Court of Appeal fairly explained the background to these claims

and rejected them, reasoning as follows:

[Petitioner] argues that the trial court violated his federal due process and Sixth Amendment rights by denying his requests, made in a motion in limine and during the trial, that evidence be admitted about Otto W.'s conviction for child molestation, purportedly of P., and the conditions of a parole that did not allow him contact with P. [Petitioner] contended that by allowing Otto W. into her home in the course of their continuing relationship, testimony of which the court did allow, C.W. engaged in an "affirmative act of child endangerment and thus evinced moral turpitude." According to [petitioner], this "moral turpitude" showed that C.W. "was not only capable of fabricating her accusations against [petitioner], but was also capable of influencing P. and N. to do so, an act which would necessarily involve taking advantage of P's and N's childhood trust of their caretaker." Therefore, [petitioner] contends, his convictions must be reversed. We reject [petitioner's] strained contentions in their entirety.

Only relevant evidence is admissible. (Evid. Code, §350.) Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, §210.) A trial [court] has broad discretion in determining the relevance of evidence, and its ruling will not be disturbed absent a showing of an abuse of that discretion. (People v. Smithey, 20 Cal. 4th 936, 973 (1999); People v. Rodriguez, 20 Cal. 4th 1, 9-10 (1999).))

Furthermore, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, §352.) It is "unquestionably constitutional" under the United States Constitution for a state to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or it would confuse or mislead the jury. (Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (plurality opinion of Scalia, J.).)

Under our state system, "[t]he [appellate] standard of review for Evidence Code section 352 challenges is abuse of discretion. 'The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'. . . [¶] On appeal, "'[a] trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered. [Citation.]"'" (People v. Vargas 91 Cal. App. 4th 506, 543 (2001).) We may reverse [petitioner's] convictions by reason

of the trial court's erroneous exclusion of evidence only if, among other things, we find the error complained of "resulted in a miscarriage of justice."  (Evid. Code, §354.)

[Petitioner's] proffered evidence should have been excluded because, as the trial court noted, it was not substantive enough, i.e., it did not establish that C.W. engaged, if at all, in particularly relevant acts of "moral turpitude."  Conduct involving "moral turpitude" includes felony convictions showing "general readiness to do evil" (People v. Castro, 38 Cal. 3d 301,314 (1985)), including instances involving "'wanton and willful (or "reckless") disregard of the plain dangers of harm without justification, excuse or mitigation.'" (People v. Campbell, 23 Cal. App. 4th 1488, 1493 (1994).)  While a felony child endangerment conviction might involve moral turpitude, it does not necessarily because it can be committed "by wholly passive conduct, free from any element of force, violence, threat, fraud, deceit, or stealth...." (People v. Sanders 10 Cal. App. 4th 1268, 1274-1275 (1992).)

[Petitioner] does not rely on any prior felony conviction of C.W. to make his case. [Citation omitted.] To the contrary, [petitioner] does not demonstrate that his theory was much more than speculation, such as that C.W. allowed Otto W., while on parole, to have contact with P. before October 18, 1995 (when she purportedly first lied, and when she persuaded the children to lie, about [petitioner's] actions), that C.W. knew Otto W.'s parole conditions sufficiently to understand that he was not allowed to have contact with P.,[6] that C.W. had contact with Otto W. in October 1995, or allowed him to live at her house around that time, or even that Otto W. had significant contact with P.  Essentially, [petitioner] showed that C.W. had allowed Otto W. to stay with her occasionally for a night of two before October 1995,[7] and threw away a birthday card that [petitioner] had given her, possibly after October 18, 1995, because in part she was concerned that Otto W. would see it.  This hardly shows C.W.'s "general readiness to do evil."

[Petitioner] also fails to adequately explain why, if he is correct, the court was *required* to admit the purported acts of moral turpitude, despite its broad discretionary authority pursuant to Evidence Code section 352. [*Emphasis* in original.]  He relies heavily, for example, on People v. Waldecker, 195 Cal. App. 3d

_____

[6] [Petitioner] did include documents in the record indicating that C.W. knew that authorities were concerned about Otto W. having contact with minors.

[7] P. testified at trial that Otto W. came back to the house after October 1995 and stayed with her mother, which was consistent with C.W.'s testimony on the subject.  P. also answered affirmatively when she was asked, "Were you there in October '95 when Otto. . . was there?" Her response, however, had little bearing on the subject, since other evidence indicates Otto W. was actually in prison in October 1995.

1152 (1987)(Waldecker).  The Waldecker court merely held that the trial court improperly declined to exercise its discretion to determine whether a defendant's prior conviction for escaping prison, which involved acts of deceit or stealth, should or should not be admitted into evidence for impeachment purposes.  (Id. at 1159.)  It did not require the lower court to introduce this evidence, and therefore is inapposite.

[Petitioner's] federal due process argument that he was denied the right to cross-examine witnesses regarding C.W.'s supposed acts of moral turpitude fails for the same reason.  As the case cited by [petitioner] makes clear, "[a]lthough the right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility, 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.' [Citation.] In particular, notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code section 352. [Citation.] A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness' credibility had the excluded cross-examination been permitted."  (People v. Quartermain, 16 Cal. 4th 600, 623-624 (1997).)

[Petitioner] also argues that respondent exploited the court's error in failing to allow in the "moral turpitude" evidence by making certain statements in closing argument about C.W.'s credibility and her relationship with Otto W., rendering the error prejudicial.  We reject this argument as well because no error occurred.
In short, most of the alleged acts of moral turpitude occurred long after October 18, 1995, had little, if anything, to do with C.W.'s veracity at that date, and demonstrate little, if anything, about her willingness or ability to persuade P. or N. to lie about [petitioner's] action.  On the other hand, their introduction could easily have confused the jury and created undue prejudice against C.W.  In any event, the trial court's ruling allowing testimony of C.W.'s continuing relationship with Otto W., while excluding the evidence of his convictions and conditions of parole certainly did not exceed the bounds of reason, nor was it a miscarriage of justice.
Therefore, we will not disturb the court's ruling.

(Answer, Ex. L (Opinion) at 16-20) (footnotes in original).

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him."  U.S. Const. Amend. VI.  The primary interest secured by the Confrontation Clause is the right of cross-examination.  Davis v. Alaska, 415 U.S. 308, 315

21

(1974) (quoting Douglas v. Alabama, 380 U.S. 415, 418 (1965)).  However, the Confrontation

Clause does not prevent trial judges from imposing limits on cross-examination.  Delaware v.

Van Arsdall, 475 U.S. 673, 679 (1986).  Rather, "the Confrontation Clause guarantees an

*opportunity* for effective cross-examination, not cross-examination that is effective in whatever

way, and to whatever extent, the defense might wish."  Id. (quoting Delaware v. Fensterer, 474

U.S. 15, 20 (1985) (emphasis in original)).  In fact, "a trial judge retains 'wide latitude' to limit

defense counsel's questioning of a witness without violating a defendant's Sixth Amendment

rights."  Carriger v. Lewis, 971 F 2d 329, 333 (9th Cir. 1992).  See also Michigan v. Lucas, 500

U.S. 145, 149 (1991).  For instance, a trial court has a duty to protect a trial witness "from

questions which go beyond the bonds of proper cross-examination merely to harass, annoy or

humiliate" the witness.  Alford v. United States, 282 U.S. 687, 694 (1931).  "'A limitation on

cross examination does not violate the Confrontation Clause unless it limits relevant testimony

and prejudices the defendant, and denies the jury sufficient information to appraise the biases and

motivations of the witness.'"  Murdoch v. Castro, 489 F.3d 1063, 1069 (9th Cir. 2007) (quoting

United States v. Bridgeforth, 441 F.3d 864, 868 (9th Cir. 2006)).

        In addition, criminal defendants have a constitutional right, implicit in the Sixth

Amendment, to present a defense; this right is "a fundamental element of due process of law."

Washington v. Texas, 388 U.S. 14, 19 (1967).  However, the constitutional right to present a

defense is not absolute.  Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003).  "Even relevant

and reliable evidence can be excluded when the state interest is strong."  Perry v. Rushen, 713

F.2d 1447, 1450 (9th Cir. 1983).  A state law justification for exclusion of evidence does not

abridge a criminal defendant's right to present a defense unless it is "arbitrary or

disproportionate" and "infringe[s] upon a weighty interest of the accused."  United States v.

Scheffer, 523 U.S. 303, 308 (1998).  A criminal defendant "does not have an unfettered right to

offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of

evidence."  Montana v. Egeloff, 518 U.S. 37, 42 (1996) (quoting Taylor v. Illinois, 484 U.S. 400,

410 (1988)).  See also Carriger, 971 F.2d at 333.  Finally, "[a] habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision."  Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

Under California Penal Code § 352, a trial court is allowed, in its discretion, to exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.  As explained by the state appellate court, it is "unquestionably constitutional" for a state to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or it would confuse or mislead the jury.  See Egelhoff, 518 U.S. at 42 (plurality opinion).

Noting that both state and federal law give a trial court discretion to exclude evidence that is substantially more prejudicial than probative, the California Court of Appeal found that here the trial court did not abuse its discretion in excluding evidence about Otto W.'s prior molestation conviction.  Petitioner was not proposing to use a prior felony conviction of C.W. for impeachment purposes, but rather was attempting to use a prior conviction of Otto W. to speculate that C.W. may have exposed P. to danger by allowing Otto W. to be present in the home.  According to petitioner, that C.W. would expose P. to such a danger was indicative of her capability to fabricate her story against petitioner and to influence P. and N. to do the same.  However, such exposure, if it ever occurred, was not contemporaneous with petitioner's alleged crime since Otto W. was found to be in prison at that time.  Nor was it in fact indicative of a propensity to lie on the part of C.W.  Therefore, the trial court could have reasonably found that the introduction of Otto W.'s past conviction for child molestation would only confuse the jury and unfairly impute Otto W.'s crimes to C.W. so as to call her character into question.

The trial court reasonably limited the defense cross-examination concerning Otto W.'s criminal history in order to exclude irrelevant evidence that it had determined  would serve merely to confuse the jury.  The trial court's ruling was not "arbitrary or disproportionate" and

did not render petitioner's trial fundamentally unfair. See Bright v. Shimoda, 819 F.2d 227, 229 (9th Cir. 1987) ("[W]e are reluctant to set aside a conviction when the defendant has enjoyed substantial cross-examination, particularly when the topic of cross-examination is a collateral matter.") For these reasons, the decision of the California Court of Appeal that petitioner's federal constitutional rights were not violated by the trial court's preclusion of defense cross-examination of Otto W. regarding his prior conviction is not contrary to or an unreasonable application of federal law.[8] Accordingly, petitioner is not entitled to relief on this claim.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 13, 2009.

Dale A. Drozd
_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:3
williams1286.hc

---

[8] Of course, state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are effected. Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir. 1990); see also Whelchel v. Washington, 232 F.3d 1197, 1211 (9th Cir. 2000).